Argued January 20, reversed and remanded February 10, 1972

STATE OF OREGON, *Appellant, v.* ROBERT LᴇROY BRIGHT (No. 31160), *Respondent.*

STATE OF OREGON, *Appellant, v.* ROBERT LᴇROY BRIGHT and CHARLES RICHARD BAKER (Nos. 31161, 31196), *Respondents.*

493 P2d 757

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*James H. Lewelling,* Newport, argued the cause

for respondents. With him on the brief was William R. Noel, Baker.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

The state has taken this appeal from an order suppressing evidence upon the ground that the search which produced it was unreasonable.

On April 24, 1971, at 11:30 a.m., a police officer came upon a passenger vehicle parked upon the right-hand shoulder of a paved road in a mountainous and unpopulated area of Lincoln County. The car had a flat rear tire and a "For Sale" sign in a rear window upon which was written a Lincoln City telephone number. The automobile bore out-of-state license plates. There were two gas cans, two fire extinguishers and some tires visible in the back part of the vehicle. One of the rear windows was open. The officer saw tracks where the vehicle had come down a steep, muddy Forest Service road which joined the highway at that point. About two months previously the officer had recovered a stolen vehicle alongside the same highway in the same general mountainous area.

The officer testified that he looked in the driver's area at the steering post and the visor to see if there was a registration certificate. Seeing none, he opened the unlocked driver's door, slid under the wheel and looked under the visor on the passenger side for registration and started to look in the glove compartment when he noticed that the seat was covered with a satin spread with a bulge under it. He pulled the spread back in order to see what caused the bulge (he said for

fear he might crush it), and saw a pair of binoculars, the empty case for which he had already noticed on the floor, and some new sandals and a leather hat in a plastic sack. The sack had the name "The Lookout, Otter Rock" and a price tag on it. The officer started back to his patrol car to determine by radio whether there had been a burglary at The Lookout at Otter Rock. As he started he noted seven or eight coat hangers with price tags on them in the back seat of the car. He opened the back door and as he reached in to get the coat hangers to inspect them he put his knee on the rear seat of the car which caused it to slide a few inches and he could see new leather goods under the seat. He removed the seat and discovered new women's skirts and other leather goods. This resulted in the ultimate arrest of the defendants for the burglary.

The motions to suppress encompassed all of the stolen personal property items which were discovered.

We have found no case precisely in point on its facts. The officer testified that he had no thoughts whatever of a burglary when he first went into the vehicle. He simply came upon a situation which might indicate his services were needed for several possible reasons which might reasonably come to mind: that this vehicle, like one he had recently found in the same area was an abandoned stolen vehicle; that the vehicle might be the key to someone in trouble who needed help; or that the property therein as well as the open vehicle should be protected for the owner against damage or theft. We think the telephone number alone on the "For Sale" sign, in view of the out-of-state license plates, did not make it unreasonable for the officer to look inside for further identification.

In *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564 (1971), the Court said:

> "* * * As we said in Chambers [Chambers v. Maroney, 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970)], supra at 51, 26 L Ed 2d at 428, 'exigent circumstances' justify the warrantless search of 'an automobile *stopped on the highway,*' where there is probable cause, because the car is 'movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained.' '(T)he opportunity to search is fleeting . . . .' (Emphasis supplied.)" 403 US at 460.

The case at bar is not at all in point on its facts with *Coolidge* or *Chambers,* but we think the reasoning used in them is applicable here. His initial investigation was not violative of Fourth and Fourteenth Amendment rights. As the Court said in *Coolidge*:

> "Yet it cannot be said that the police should have obtained a warrant * * * since they had no intention of rummaging around * * *. Nor can it be said that they should have obtained [defendant's] permission for a seizure they did not intend to make * * *." 403 US at 488.

The Court said in *Chambers*:

> "* * * [T]he circumstances that furnish probable cause to search a particular auto for particular articles are most often unforeseeable * * *." 399 US at 50-51.

Once the officer in the case at bar came upon the contraband during his innocent investigation of the vehicle he had probable cause, until then "unforeseeable," to believe a burglary had occurred. His warrantless search thereafter was such as was approved in *Chambers*.

Reversed and remanded for trial.