Argued May 24, reversed and remanded August 9, reconsideration denied
August 18, petition for review allowed September 1, 1976

STATE OF OREGON, *Appellant,*

*v.*

JAMES W. GILBERT, *Respondent.*

(No. 75-2606, CA 5232)

552 P2d 869

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*William F. Frye,* Eugene, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

**LEE, J.**

The state appeals the trial court's suppression of evidence. ORS 138.060(3).[1]

On March 27, 1975 a district court judge issued a warrant which authorized the search of a cabin on the shore of Odell Lake. The warrant specified the objects of the search as a portable space heater, a television set, and a quadrophonic 8-track playback system with radio. Each item was described in detail. The warrant was undated and did not specify the time within which it was to be executed.

The warrant was based upon an affidavit by a Detective Lilly of the Lane County Sheriff's Office which stated that he had been told by a named informant that the informant (1) had been told by the daughter of the people who had control of the cabin (Mr. and Mrs. Gilbert) that the aforementioned items were stolen; (2) had seen the aforementioned items on six weekends between December 14, 1974 and February 22, 1975; (3) had had extensive contact, for the last six months, with Mr. and Mrs. Gilbert; (4) was usually informed by the Gilberts of any removals from the cabin during the last six months but that since February 22, 1975, the Gilberts had given no indication to him that the three items had been removed from the cabin; and (5) on March 27, 1975 had seen through the window of the cabin, the heater. Lilly had met the informant for the first time. The affidavit also recited that:

"I, Dennis W. Lilly, have knowledge that a report exists within the Lane County Sheriffs Office which indicates the above described heater has been stolen."

In fact, there was no such report. On March 27, 1975, the police executed the search warrant.

---

[1] ORS 138.060(3) provides:

"The state may take an appeal from the circuit court to the Court of Appeals from:

"* * * * *

"(3) An order made prior to trial suppressing evidence; * * *

"* * * * *."

During the course of the search a 7.5 horsepower, black, Mercury outboard motor was removed from a closet; upon seeing the motor, which appeared to be new and unused, Officer Kunkler immediately thought of a previously reported theft of an outboard motor. The previous theft had occurred about one and a half miles from the cabin about nine months before; it involved a new 1974 model, blue and white, Clinton Sea King, seven-horsepower, air-cooled, outboard motor.

Officer Kunkler testified that at the time the Mercury motor was found he remembered the motor reported stolen previously as about a seven-horsepower motor and that he did not remember the color. Officer Kunkler assisted the other officers in removing the cover plate from the motor. The officers then saw that the serial number had been obliterated and seized the motor.

Officer Kunkler testified that, based on his experience, an obliterated identification number means that the property is probably stolen. He also testified that it is not unusual to find an outboard motor in a cabin at the lake.

The television set was never found in the cabin; the heater and the playback system were later determined *not* to be stolen and were returned to the defendant.

The trial court ordered suppression because

"[t]he State failed to establish by clear and convincing evidence that the police had probable cause to believe the outboard motor described in the indictment was stolen prior to its seizure and subsequent internal examination. The search and seizure of the outboard motor was beyond the scope of authority of the search warrant."

The state insists that it was error to suppress the motor as evidence because the police had probable cause to seize it. Defendant contends that the police did not have probable cause to believe that the motor was subject to seizure prior to removing the cover

plate. The defendant also challenges the validity of the warrant itself on alternative grounds.

■■   Assuming that the warrant is valid, the police had a right to be inside the cabin. When they are in a place where they have a right to be, police can seize evidence of a crime which is in plain view. *State v. Brewton,* 19 Or App 899, 529 P2d 967 (1974), Sup Ct *review denied, cert denied* 423 US 851 (October 6, 1975). The question, therefore, is whether the police had probable cause, before removing the cover plate, to believe the motor was stolen. A well-warranted suspicion is sufficient to establish probable cause; certainty is not required. *State v. Evans,* 16 Or App 189, 193, 517 P2d 1225 (1974).

■   When the police are searching a residence of a suspected thief, pursuant to a warrant, and they find in plain view an item approximating the description of something reported stolen a mile and a half away nine months before, there is probable cause for a seizure. It follows that the officers had the right to remove the cover from the motor which lead to discovery of the obliterated serial number.

Defendant also suggests alternate grounds for affirming the suppression order.

■   First, defendant contends there was not, based on the affidavit, probable cause for issuance of the warrant, emphasizing that the affiant's statements are hearsay once removed and that there apparently was no report of a stolen heater, as the affidavit stated.

We find that even excising that part of the affidavit referring to the report of the stolen heater, there were sufficient facts stated to support a finding of probable cause.

Our Supreme Court stated in *State v. Ingram,* 251 Or 324, 326, 445 P2d 503 (1968), that

"[h]earsay evidence is sufficient if the affidavit states facts from which the magistrate can reasonably infer that the informant of the affiant is credible or reliable."

[ 377 ]

This court stated in *State v. Bauer,* 16 Or App 443, 447, 519 P2d 96 (1974), that

> "[t]he reliability of the 'citizen informer,' * * * by reason of her having been identified both by name and as the owner and landlord of the premises searched, was * * * sufficiently established. * * *"

A logical extension of *Ingram* and *Bauer* supports the affidavit in the instant case. The reliability of the informer stems from his connection with the Gilberts, who had control of the cabin.

■ Finally, defendant emphasizes that there was no return date on the warrant.[2] However, as we noted in *State v. Mathis,* 24 Or App 53, 544 P2d 170, Sup Ct *review denied* (1976), the failure of the issuing judge to comply with statutory requirements of a search warrant (in that case, ORS 133.555(1))[3] does not require the suppression of evidence absent a showing that the defendant is prejudiced by the statutory violation. Here, there could be no prejudice to the defendant since the search took place well within the statutory time limit for the execution of a search warrant.

Reversed and remanded.

**SCHWAB, C. J.,** dissenting.

When, in the course of executing a search warrant

---

[2] ORS 133.565 provides:

"(1) A search warrant *shall be dated* and shall be addressed to and authorize its execution by an officer authorized by law to execute search warrants.

"(2) The warrant shall state, or describe with particularity:

"* * * * *

"(d) The period of time, not to exceed *five days,* after execution of the warrant except as provided in subsection (3) of this section, within which the warrant is to be returned to the issuing authority.

"* * * * *." (Emphasis supplied.)

[3] ORS 133.555(1) provides:

"(1) Before acting on the application, the judge may examine on oath the affiants, and the applicant and any witnesses he may produce, and may himself call such witnesses as he considers necessary to a decision. *He shall make and keep a record of any testimony taken before him.* The record shall be admissible as evidence on any motion to suppress." (Emphasis supplied.)

authorizing seizure of specific items, officers seize additional items, the state has the burden of proving the validity of such additional seizure. *State v. Sagner,* 12 Or App 459, 506 P2d 510, Sup Ct *review denied* (1973). For present purposes, this means: When the searching officers saw an outboard motor in a closet in a lakeside cabin, did they have probable cause at that instant to believe the motor was stolen?

The majority's reliance on the obliterated serial number is unclear. This should be irrelevant. A warrant to search for such things as a television does not authorize opening the engine compartment of an outboard motor. ORS 133.585. The question, to repeat, is whether the state sustained its burden of proving there was probable cause to seize the motor as stolen property as soon as it was discovered.

I think not. There is nothing inherently suspicious about an outboard motor in a closet in a lakeside cabin, even if the cabin is owned by a suspected thief. This is what distinguishes these facts from *State v. Brewton,* 19 Or App 899, 529 P2d 967 (1974), Sup Ct *review denied, cert denied* 423 US 851 (1975), in which we held it was inherently suspicious for a suspected burglar to be driving around with large pieces of stereo equipment in the back seat of his car.

The majority holds that the black, Mercury outboard motor found is "an item approximating the description" of the blue and white, Clinton Sea King outboard motor previously stolen, and that whenever searching the residence of a suspected thief, officers may seize all items that approximate the description of property reported stolen. 26 Or App at 377. This is a sweeping holding. Unfortunately, burglary and theft are common occurrences. Practically all portable household items which have value are stolen in burglaries. If the police have probable cause to believe that any household item which is sometimes the subject of theft is in fact stolen just because it is in the home of a suspected thief, then every time the police have a warrant to enter

a house to search for a specified stolen item they also have probable cause to seize all the myriad household items of the kind that are reported stolen every day.

The majority's sweeping holding is inconsistent with *State v. Sagner, supra.* I prefer the *Sagner* approach. *See also, State v. Mays,* 19 Or App 518, 528 P2d 109 (1974).

Finally, the majority holds the affidavit in application for the search warrant to be adequate. I also dissent from this holding on the ground that the record does not include the original of the affidavit in question. The original was handwritten. The record includes a typed copy prepared by defense counsel. At the suppression hearing, the state suggested that the typed version might not accurately reflect the handwritten version. Under these circumstances, I do not believe we have a sufficient record to pass on the adequacy of the original affidavit.

For the foregoing reasons I dissent.