Argued and submitted February 22, 1984, reversed and remanded February 27, reconsideration denied April 19, petition for review allowed July 2, 1985

# STATE OF OREGON,
*Respondent,*

*v.*

# RODERICK DARNELL BROWN,
*Appellant.*

## (DA 249576-8301, DA 249577-8301; CA A29759)

695 P2d 1383

David C. Degner, Hillsboro, argued the cause and filed the brief for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his convictions for carrying a concealed and loaded handgun in his automobile. ORS 166.250; Portland City Code § 14.32.010. He assigns as error the trial court's refusal to suppress evidence of the handgun seized after a nonconsensual, warrantless search of a closed leather bag seized as a result of a search of the locked trunk of his automobile. Because we conclude that the evidence should have been suppressed, we reverse.

At about 1:15 in the morning, Portland Police Officers Hudson and Krohn observed defendant lawfully driving his automobile in which there was a passenger. The officers stopped defendant, because they had received a complaint from a Ms. Tillman the previous morning that defendant had hit her with his fists and had taken her black clutch purse containing $15 or $20. Hudson was familiar with both defendant and Tillman, having previously investigated a domestic disturbance involving them. He described the present incident as a "beef" that Tillman had with her boyfriend. She had told the officers that defendant always carried a handgun in a "black purse," either on his person or in his car. During the earlier domestic disturbance investigation, Hudson reported that defendant had had a gun in his pocket. The officers put out a bulletin requesting officers to look for defendant's 1974 white and orange Cadillac, giving the license number. No effort was made to obtain a warrant for defendant's arrest or for the search of his car.

The trial court found that the reason for the stop was to arrest defendant on the assault and theft charges and that Hudson informed defendant of the complaint and about the accusation that he possessed a weapon; he also advised defendant that he was under arrest for assault and theft. Defendant did not respond. He was asked for, but refused, permission to search his automobile. Those findings are supported by the record and, although the evidence as to what defendant was told is ambiguous, we are bound by them. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968).

Notwithstanding defendant's refusal to consent, the officers searched the passenger compartment and glove box. Krohn then opened the locked trunk, and the officers saw a black leather bag, which they said was similar to the one

described by Tillman as the bag in which defendant carried a handgun. It is not clear from the record whether the bag had a zipper, but it was closed. When Krohn picked it up, it felt very heavy, and he could feel a handgun inside. He opened the bag and found a loaded revolver. The bag and its other contents were seized along with the gun.

Sometime after the stop, two other police officers arrived but, according to Hudson, "at that point the situation was under control." Krohn testified that defendant was handcuffed during the entire search. Hudson could not remember when, or if, defendant was handcuffed, but said that he was placed in the patrol car when "we decided we were going into the trunk and get the gun out." The passenger was not arrested, and defendant's car was released to him. Defendant was taken to jail and booked on the assault and theft charges; however, Tillman never signed complaints charging him with those crimes.

Defendant does not challenge the officers' authority to stop his automobile or their authority to arrest him on Tillman's complaint of assault and theft. Neither does he challenge the officers' authority to search for weapons on his person and within the area of his immediate reach. *See State v. Davis*, 295 Or 227, 242, 666 P2d 802 (1983); *State v. Chinn,* 231 Or 259, 267, 373 P2d 392 (1962). His challenge is to the officers' authority to extend their search for the gun to a closed container within the locked trunk of his automobile without his consent and without a warrant.

The case was tried, and is argued here, as if the only question is whether the officers were permitted to search for the gun. We will discuss that question first, but note that, if they were entitled to search for the victim's purse in the locked trunk, seizure of the pistol was lawful.[1] Defendant's principal argument is that the officers lacked authority to search the trunk for the gun, because they had no basis for believing that the gun was a permissible object of search or seizure. ORS 133.535. In the alternative, he argues that the circumstances were not sufficiently exigent to justify a warrantless search, because he was in custody and the officers had the option of

---

[1] The outline of the pistol could be felt readily when the purse was picked up by the officer.

securing his automobile or seizing the bag while seeking a warrant before searching further. The state contends that the search was lawful on any one of three grounds: (1) it was incident to defendant's arrest; (2) it falls within the "automobile exception" to the warrant requirement; (3) it was authorized by the "stop-and-frisk doctrine."

The trial court, relying on *United States v. Ross*, 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), upheld the search and seizure. In that case, the United States Supreme Court held that

"* * * the scope of the warrantless search authorized by [the automobile exception] is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 US at 825.

■    We look to state law first to determine whether the searches and seizures were lawful; only if we determine that they were lawful as a matter of state law do we need to decide whether they were prohibited by federal Fourth Amendment principles such as those applied in *Ross*. *State v. Kennedy*, 295 Or 260, 666 P2d 1316 (1983).

■    We agree with defendant that the officers did not have authority to search the locked trunk of his automobile for the gun. On the basis of the information supplied by the victim, the officers did have probable cause to believe that defendant had a weapon either on his person, in the passenger compartment or glove box of the automobile or in the trunk. When they did not find the weapon on his person, in the passenger compartment or in the glove box, they had probable cause to believe that it was in the trunk. That fact, standing alone, however, does not supply probable cause to believe that the gun was subject to search and seizure under ORS 133.535. *Compare State v. Wright*, 30 Or App 11, 566 P2d 185 (1977) (defendant was ex-convict and gun was used in the alleged crime), and *State v. Jackson*, 33 Or App 139, 145, 575 P2d 1001 (1977), *rev den* 283 Or 99 (1978) (defendant was ex-convict) with *State v. Mays*, 19 Or App 518, 528 P2d 109 (1974) (no probable cause to believe gun was contraband). It is a crime to carry a concealable weapon in a motor vehicle without a license to do so, unless one of the other statutory exceptions is

applicable. ORS 166.250.[2] There is no evidence that the officers reasonably believed that defendant did not have a license or evidence that would support a determination that the officers had probable cause to believe that the gun was otherwise subject to search and seizure under ORS 133.535.[3] Without a showing that the gun was subject to search and seizure, a warrant could not issue. ORS 133.555(2). Because a warrant could not have issued on the record before us, the officers were without authority to search the trunk of defendant's automobile for the purpose of seizing the gun. *State v. Chinn, supra,* 231 Or at 275.

The state contends that the search of the trunk was permissible as a search incident to arrest. It is clear that a warrantless search and seizure incident to arrest is permissible if the search is related to the crime for which the defendant is arrested and the search is reasonable under the circumstances, even though the search is *not* necessary to protect the officer or to prevent the destruction of evidence. *State v. Caraher,* 293 Or 741, 759, 653 P2d 942 (1982). However, a search incident to arrest does not justify exploration of every object in an arrestee's immediate possession and control;[4] only

---

[2] ORS 166.250 provides, in pertinent part, that

"* * * any person who * * * carries concealed * * * within any vehicle which is under his control or direction any pistol, revolver or other firearm capable of being concealed upon the person, without having a license to carry such a firearm * * * is guilty of a misdemeanor * * *."

Several classes of persons are exempted altogether from application of ORS l66.250. Among those are hunters, fishermen and gun club members when engaging in or going to and returning from those pursuits. *See* ORS 166.260.

[3] ORS 133.535 provides:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

[4] In this case it is at least questionable whether the objects in the bag inside the

those objects that are reasonably related to the reason for the arrest may be searched for or seized, *State v. Lowry,* 295 Or 337, 348, 667 P2d 996 (1983), and if the items could not be seized under a warrant, they may not be seized incident to arrest, in the absence of safety considerations. *State v. Chinn, supra.*

■ Here, the officers' search for defendant's gun was not related to the reasons for his arrest. Defendant was arrested for assault and theft. The record shows that neither crime involved a gun. As we have pointed out, the officers could not have obtained a search warrant for the gun without more evidence than is in the record. Accordingly, the search does not fall within the search incident to arrest exception to the warrant requirement.

The state has not argued that the officers were authorized to search for the victim's purse incident to the arrest for theft. Although, as a general proposition, a search for fruits of the theft would have been permissible incident to defendant's arrest, it may be that the state concluded, as do we, that a search of the locked trunk exceeded the permissible bounds of that exception to the warrant requirement.

■■ In addition to being related to the crime for which the person is arrested, a search incident to arrest must be reasonable in time, scope and intensity. *State v. Caraher, supra; State v. Chinn, supra.* Although the search of the trunk was reasonable in time in the sense that it was conducted immediately following defendant's arrest, *see State v. Kirsch,* 69 Or App 418, 423, 686 P2d 446, *rev den* 298 Or 151 (1984), it was unreasonable in time in the sense that there was no reason to believe that the purse containing $15 to $20 would be in the trunk of defendant's car 22 hours after the alleged theft. The search for the purse was also unreasonable in scope and intensity. In *State v. Martin,* 71 Or App 1, 6, 691 P2d 154 (1984), we said:

"* * * Although the search of defendant's trunk for marijuana could be related to the reason for arrest, the scope of

locked trunk were under the arrestee's immediate possession and control.

"[M]ere arrest and custody, divorced from the reasons for the arrest, do not subject a person and his belongings to unlimited inquisitorial powers that would not apply if he were not arrested." *State v. Lowry, supra,* 295 Or at 348; *see also State v. Elkins,* 245 Or 279, 287, 422 P2d 250 (1966).

that search was not reasonable. The warrantless search of the interior of defendant's car was a permissible search incident to arrest. However, the opportunity to obtain a warrant is an important factor in evaluating the permissible scope of a warrantless search. *State v. Lowry, supra* n 1; *State v. Chinn,* 231 Or 259, 273, 337 P2d 392 (1962). Once the police reach a logical stopping point in the course of a search incident to arrest, they must seek a warrant, *State v. Flores,* 68 Or App 617, 685 P2d 999, *rev den* 298 Or 151 (1984), and that point was reached before the search of the trunk. Defendant was in custody, and there was nothing to indicate that any evidence that might be in the trunk was in jeopardy."

The same thing may be said here.

In *State v. Gordon,* 71 Or App 321, 692 P2d 618 (1984), we held that a full search of a van, together with the closed containers within, was reasonable in time, scope and intensity when the officers' belief that the defendant was a drug courier, who was in the act of transporting contraband in his van, formed the basis for his arrest, and it was for that contraband that the officers searched. The scope of that search was wide, and its intensity great, but we held that it was reasonable, because the officers had specific information to support a belief that contraband was then in the vehicle and that it was within closed containers that the contraband was most likely to be found.

The reasonableness of the scope and intensity of a search incident to arrest depends on all of the circumstances. In *Gordon,* the officers had probable cause to believe that the defendant's van contained contraband, because they had probable cause to believe that he had driven to where the officers were to make a delivery of contraband. Here the officers did not have probable cause to believe that the evidence they sought—the purse containing a small amount of money and allegedly taken from the victim 22 hours earlier— was in the trunk of defendant's car. Thus, even if the scope and intensity of the present search had been the same as the search in *Gordon,* the facts which made the search in *Gordon* reasonable under the circumstances are not present to support the search in this case.

The state also argues that the search falls within the "automobile exception" to the warrant requirement as that

exception is enunciated in *United States v. Ross, supra.* The state's argument fails:

> "* * * *Ross* is based on the 'automobile exception' under the Fourth Amendment. There is no 'automobile exception' under the Oregon Constitution. * * *" *State v. Kirsch, supra,* 69 Or App at 421.

*See also State v. Martin, supra.*

■■ The short answer to the state's contention that the "stop-and-frisk doctrine" applies in this case is that it does not. *State v. Bowcutt,* 62 Or App 591, 661 P2d 565 (1983), and *State v. McGregor,* 57 Or App 78, 643 P2d 1315 (1982), relied on by the state, involved the search of a person and the area within that person's immediate reach for weapons when the officers had reasonable grounds for believing that the person was presently armed. In this case, there is no claim that the officers feared for their safety. In any event, the scope of a frisk incident to a stop may not exceed the scope of a search incident to arrest. Hudson testified that additional police officers were present and that the situation was under control. There is no evidence that defendant's passenger posed a danger to the officers or anyone else. Furthermore, defendant does not challenge the search of the passenger compartment and glove box of his automobile.

Because we conclude that the challenged searches and seizures conducted by the officers in this case were unlawful as a matter of state law, we need not address their legality under federal Fourth Amendment principles. *State v. Kennedy, supra.*

Reversed and remanded for a new trial.