Argued and submitted July 30,
reversed and remanded September 22, 1980

# STATE OF OREGON,
## *Appellant,*
*v.*
# CHARLES AUTRY WILLIAMS,
## *Respondent.*

(No. C79-09-33235, CA 16610)

617 P2d 629

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Ken Orcutt, Portland, argued the cause for respondent. On the brief was Richard S. Mannis, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

The issue in this case and in the companion case of *State v. Brown,* 48 Or App 223, 616 P2d 582 (1980) is whether jeopardy has attached and prohibits a retrial when, in defendant's first trial, due to the bailiff's inadvertent error, the jury saw the defendant in handcuffs and the trial court granted the defendant's subsequent motion for mistrial. The trial court in the present case held that jeopardy had attached and dismissed. We reverse. We hold that the bailiff's negligent mistake in this case is not judicial misconduct which precludes a retrial of the defendant. *State v. Rathbun,* 287 Or 421, 600 P2d 392 (1979).

The record made below on the defendant's motion to dismiss is sparse. The only account of the events leading up to the mistrial is contained in the bailiff's statement. The parties stipulated to the admission of the statement which, in pertinent part, reads as follows:

"I am Bailiff-Secretary for Judge J. J. Murchison, Dept. 14.

"On the day in question, November 20, 1979, our Jury Room was in the process of being painted, and I had made arrangements to utilize the Jury Room adjacent to Judge Unis's courtroom, as they had no jury. At the conclusion of the impaneling of the jury, a recess was declared, and I escorted the jury to the substitute Jury Room. I had no key to the door of the Jury Room, and I left it open while I returned to my office. I collected a pot of coffee which I had made for the jury and took it into the Jury Room for any jurors who might want a cup of coffee during recess. I advised them where they would find packets of cream and sugar and then left the room, CLOSING the door after me. At that point, I realized that access to the jury room was possible directly from the courtroom (which differs from our own arrangement) so I could enter in that manner rather than from the hall.

"* * * * *

"Upon my return down the hall, as I approached the courtroom I saw Judge Murchison standing in the open doorway to his Chambers, motioning to me. I

asked, 'Shall I bring the jury?' and he shook his head No and motioned me into Chambers. He then advised me that a motion had been made for a mistrial and that he had granted same, and that when the courtroom was cleared I was to bring the jury back into our courtroom and he would advise them that the case had been withdrawn from jury consideration. This was done, and the jury excused. I called the jury room on the first floor and notified them of this action.

"It was not until the Judge informed me as to what had transpired that I learned that the guards had taken the prisoners past the Jury Room door while it was open."

While the bailiff's statement is not entirely clear on this point, the parties agree that the defendant was in handcuffs when he was led past the open door of the jury room. The parties also agree that, following this episode, the defendant moved for a mistrial.

■ On this appeal, the state does not ask us to examine the propriety of allowing the defendant's motion for mistrial.[1] Rather, the state contends that, while the mistrial was proper, the bailiff's mistake is not such judicial misconduct as to invoke the bar of double jeopardy. We agree.

The statutes concerning double jeopardy do not prohibit the retrial of this defendant.

ORS 131.515 provides in part:

"Except as provided in ORS 131.525 and 131.535:

"(1)   No person shall be prosecuted twice for the same offense.

"* * * * * ."

By it own terms, ORS 131.515 is subordinate to ORS 131.525, which provides in part:

"A previous prosecution is not a bar to a subsequent prosecution when the previous prosecution was

---

[1] However, the state correctly notes that the fact that jurors have seen a defendant in handcuffs or shackles does not necessarily constitute grounds for a mistrial. *See State v. Moore,* 45 Or App 837, 609 P2d 866 (1980). Due to the sparse record presented below, we do not have before us the full set of facts, or the precise reasoning which led to the decision to grant the defendant's motion for mistrial.

properly terminated under any of the following cir-
cumstances:

"* * * * *

"(2) The trial court finds that a termination,
other than by judgment of acquittal, is necessary
because:

"* * * * *

"(c) Prejudicial conduct, in or outside the court-
room, makes it impossible to proceed with the trial
without injustice to either the defendant or the state
* * *."

Here, it is clear that the trial court terminated
the prosecution under the provisions of ORS
131.525(2)(c).

However, the defendant contends and the
court below found that a retrial of the defendant is
prohibited by the constitutional proscription against
double jeopardy.[2] Our analysis of this contention turns
upon an examination of and comparison between *State
v. Rathbun, supra,* and this case.

In *State v. Rathbun, supra,* the court held that
the bailiff's misconduct required the imposition of the
bar against double jeopardy. In that case the bailiff
made improper remarks to the jury

"* * * concerning sentencing habits of the trial
judge where a gun is involved, the range of sentences
for robbery and the knowledge of the criminal ele-
ment of society to be realized by riding in a patrol car
with an officer. There [was] evidence that the bailiff's
remarks were made on several occasions during the
course of the trial, and one juror left the jury room
during one recess to escape the bailiff's discourse
upon the subjects above noted. * * *" 287 Or at 424.

The trial ended in a mistrial when the jurors were
unable to reach a verdict. The judge who heard the
subsequent motion to dismiss on the grounds of former
jeopardy,

"* * * found that the bailiff's conduct was not
attributable to mere negligence. He found rather that

---

[2] "No person shall be put in jeopardy twice for the same offense * * *."
Or Const., Art. I, § 12. *See State v. Rathbun, supra,* 287 Or 431-432.

she was motivated by 'bad faith or prejudice' against the defendant. * * *" 287 Or at 424 (footnote omitted).

In holding that the bailiff's conduct in *Rathbun* triggered the bar of double jeopardy, the court concluded that the conduct was akin to judicial misconduct

" '* * * intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. * * *.' " 287 Or at 430, quoting from *United States v. Dinitz*, 424 US 600, 611, 96 S Ct 1075, 47 L Ed2d 267 (1976). *See also United States v. Jorn*, 400 US 470, 91 S Ct 547, 27 L Ed2d 543 (1971).

In reaching this conclusion, the court emphasized that the bailiff's misconduct in *Rathbun* was intentional, and that it was motivated by a desire

"* * * to assist the state in securing a conviction." 287 Or at 432.

The court stressed that

"[t]he misconduct by this bailiff is so abhorrent to the sense of justice that we find the same sanction is required to effectuate the constitutional command as in the case where the prosecutor or the judge intends to provoke a mistrial. * * *" 287 or at 432-433.

■ In contrast, in this case the bailiff's mistake was inadvertent. She left the jury room door open because she had no key and she believed that there was no other access to the room. The bailiff appears to have been motivated only by the innocuous desire to obtain coffee for the jury. Unlike the conduct in *Rathbun,* here the bailiff's actions were "attributable to mere negligence." 287 Or at 424. The bailiff in this case was not motivated by bad faith and her conduct was not akin to "the case where the prosecutor or the judge intends to provoke a mistrial." 287 Or at 433. We also note that in this case the bailiff's mistake occurred just after the jury had been impaneled. In *Rathbun,* the bailiff's remarks were made throughout the trial.

We hold that double jeopardy does not preclude the trial of this defendant. The mistake which

resulted in a mistrial was inadvertent, not intentional, and the mistake was not motivated by bad faith but by solicitude for the jury. The error occurred early in the proceedings. Not every error by a bailiff, or other judicial officer, even though a ground for a mistrial, is of sufficient magnitude or effect to trigger the bar of double jeopardy.

Reversed and remanded.