## 68644. DAVENPORT v. THE STATE.
(324 SE2d 201)

BEASLEY, Judge.

Defendant appeals the denial of his motion for new trial following his conviction for armed robbery. His sole enumeration of error is that he was denied effective assistance of retained counsel.

At trial, the State presented the testimony of the victim who identified defendant as the perpetrator and had picked him out of lineups. The investigating detective testified that the victim had identified defendant first in a photo lineup and later in a physical lineup. One Crenshaw testified that he was in Fulton County Jail with defendant and that defendant told him that he had committed the robbery. The defense cross-examined the State's witnesses and, for impeachment purposes, obtained Crenshaw's admission that he had several felony convictions. Defendant testified and sought to impeach the victim's testimony by stating that the victim's testimony at the preliminary hearing was inconsistent with his trial testimony because the description he gave of the robber at the hearing apparently did not describe defendant and he did not identify defendant at the hearing. Defendant also stated that he was in Fulton County Jail with Crenshaw for five days, that they talked and that Crenshaw denied setting him up. Defendant denied committing the robbery, claimed that he had been set up by others, but gave no alibi testimony.

After conviction, defendant filed a pro se motion for judgment notwithstanding the verdict or a mistrial based on the general grounds. Having apparently severed his relationship with his retained counsel, he was appointed a public defender who, after defendant questioned his professionalism and integrity, was relieved as counsel by the court at his own request. Another public defender was appointed. She filed an amended motion for new trial to defendant's pro se motion for judgment notwithstanding the verdict or mistrial raising the general grounds and ineffective assistance of counsel. This public defender was supplanted by current retained counsel who also filed an amended motion for new trial, claiming ineffective counsel. At the hearing on the motion for new trial, defendant presented the testimony of several witnesses as follows:

Defendant testified that prior to trial he informed his trial defense counsel that the victim's testimony at the preliminary hearing was inconsistent with his expected testimony at trial, and asked his counsel to get a transcript of that hearing. Counsel said he would but did not. He told his counsel the names of Ivey, Choates, Worthy, Wright and Marsengill, asked him to talk to them because they may have some information helpful to his case, and counsel said he would but never did. His counsel did talk with Marsengill, but did not subpoena him or any of the other persons whose names he was given. No

witnesses other than defendant testified at trial although defendant thought he could establish an alibi. His alibi was that he was cleaning gutters at Worthy's house at the time of the robbery but he did not testify to that at trial because his counsel never asked him the question.

Choates testified that she did not remember the day of the robbery but might have if she had been contacted before trial. Wright's testimony was that she could not remember the events of the date of the robbery but was seeing defendant that month. Ivey testified that if he had been contacted he could have provided counsel with the names of persons who had information about Crenshaw. Worthy apparently was never located and did not appear as a witness at the hearing. Marsengill, a detective, testified he was called by counsel prior to trial, but was not subpoenaed and instead was called to appear the day of trial without subpoena. Marsengill said that defendant had helped him apprehend a criminal suspect in another case and that defendant told him that he thought his arrest in the instant case was some sort of retaliation for causing that person to be arrested.

Trial defense counsel testified that he initially interviewed defendant in jail where he was under sentence for another offense. He did not file any motions, nor interview Ivey, Wright, Choates or Worthy. He did speak telephonically with Marsengill who told him there was no need to subpoena him as he would appear if needed. He had serious doubts whether Marsengill's testimony would be helpful but did call him the morning of the trial and he was not available. Counsel had defendant testify as to the victim's prior inconsistent statements concerning his identification of defendant made in his testimony at the preliminary hearing. He did not obtain a transcript of the preliminary hearing. He did not obtain an affidavit of the custodian of the Fulton County Jail to show that Crenshaw was not there when defendant was, as this was not mentioned to him until after defendant was convicted. He stated that defendant was the type of person who wanted to run the case his way and "I explained to him if I was going to handle the case that I would have to do it the way I felt would be best for him." Defendant called him numerous times and would give him various things he thought would help in his case. Counsel was aware that the victim was going to identify defendant and that defendant was under the impression he was being retaliated against because he had given information to law officers about other persons. He was aware that Crenshaw had a lot of convictions and had him admit to them in cross-examination. He knew about Ivey, whom he believed was to be an alibi witness, but knew of none of the other names defendant said he gave him. Marsengill had nothing that would rebut evidence that defendant was identified as the robber. Af-

ter conviction defendant gave him the name of an inmate (apparently Crenshaw) whom he thought had set him up. *Held*:

This case is an example of a defendant who tries to tell his attorney how to try the case, but the attorney tries the case in a manner he believes would be the best way to defend, and the defendant after conviction complains that the attorney denied him effective assistance. It is apparent that the strategy of the attorney here was to attempt to discredit the victim's identification of defendant by cross-examination and the victim's prior inconsistent statements and, in addition, to impeach Crenshaw, who testified that defendant told him he committed the robbery, by his numerous convictions. Defendant on the other hand contends various other things should have been done, especially the presentation of alibi evidence and evidence of his belief that the person he had informed on retaliated against him by causing him to be arrested for the robbery. Defendant did not present any alibi at trial and the testimony of his claimed alibi witnesses in the motion hearing shows that none of them could provide such evidence. Worthy, the person defendant claimed to be working for when the robbery occurred, was never located.

1. It is contended that the conduct of defendant's trial counsel constituted a violation of the Georgia Bar Rules, Canon 6. While counsel did make reference to "ABA standards," the issue of a violation of Georgia Bar Rules was not addressed in the lower court.

Therefore, such issue will not be reviewed by this court because "[g]rounds which may be considered on appeal are limited to those which were urged before the trial court." *Kingston v. State*, 127 Ga. App. 660 (2) (194 SE2d 675) (1972).

2. In his brief to this court, defense counsel contends that there was a violation of defendant's right to competent, effective trial counsel as guaranteed by the 6th Amendment to the U. S. Constitution and Art. 1, Sec. 1, Par. 14 of the Georgia Constitution.

As is apparent from the scope of the brief as well as the context, argument and authorities cited, defense counsel has made no distinction as to state or federal constitutional rights regarding ineffective counsel and in no way has he sought to separate state requirements as contradistinguished from federal prerequisites. He makes no argument based separately on the Georgia Constitution but does primarily cite federal cases and state cases applying the federal constitution. The distinction must be preserved. See Michigan v. Long, ___ U. S. ___ (103 SC 3469, ___ LE2d ___) (1983). See also State v. Kennedy, 49 Or. App. 415 (619 P2d 948) (1980), reversed and remanded, Oregon v. Kennedy, 456 U. S. 667 (102 SC 2083, 72 LE2d 416) (1982), affirmed, State v. Kennedy, 61 Or. App. 469 (657 P2d 717) (1983), affirmed, State v. Kennedy, 295 Or. 260 (666 P2d 1316) (1983).

Thus, we treat this issue as predicated on rights guaranteed by

the United States Constitution.[1]

By two decisions on the same date of May 14, 1984, the United States Supreme Court established standards in this important area regarding the right to counsel. In United States v. Cronic, ___ U. S. ___, 52 LW 4560, 4562-3 (1984) the court reiterated the maxim that the right to counsel is the right to effective assistance of counsel. Furthermore, "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." The court noted that because of the presumption that a lawyer is competent, "the burden rests on the accused to demonstrate a constitutional violation." The court then held that in certain contexts prejudice was presumed: as where there is actual or constructive denial of the assistance of counsel altogether — "The court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." In addition, no specific showing of prejudice was mandated in those instances where there were various types of state interference with counsel's assistance, described as constitutional error of the "first magnitude," citing inter alia Davis v. Alaska, 415 U. S. 308 (94 SC 1105, 39 LE2d 347) (1974); Powell v. Alabama, 287 U. S. 45 (53 SC 55, 77 LE 158) (1932).

In the second case of May 14, Strickland v. Washington, ___ U. S. ___, 52 LW 4565 (1984), the court categorized an additional type of actual ineffectiveness claims which warranted a similar, but more limited, presumption of prejudice, that is, when counsel is burdened by an actual conflict of interest. Those instances aside, the court then established a standard by which to measure claims of "actual ineffectiveness," that is, where the client complains that counsel deprived him of the right to effective assistance. "The benchmark for judging any claim of ineffectiveness," the court wrote, "must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 4570. The question divides itself into two parts: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the

---

[1] Since Georgia has not adopted the standards under the federal constitution enunciated by the United States Supreme Court in United States v. Cronic and Strickland v. Washington, infra, the Georgia standard is as stated in *Pitts v. Glass*, 231 Ga. 638 (203 SE2d 515) (1974). See *Spence v. State*, 163 Ga. App. 198 (1) (292 SE2d 908) (1982).

defendant of a fair trial, a trial whose result is reliable." Id. at 4570.

As to the first inquiry, the proper standard is that of "reasonably effective assistance," viewed as of the time of counsel's conduct and on the facts of the particular case. As to the second inquiry in cases where prejudice is not presumed, the proper standard is that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 4572.

The court then pointed out: "Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Id. at 4573.

An examination of the circumstances of this case leads to the inescapable conclusion that a determination here may be achieved by application of the "prejudice component" of Strickland, supra. Although defendant argues that he need not show prejudice because, in certain respects, trial counsel's conduct was functionally equivalent to no representation at all, there is no actual or constructive denial of the assistance of counsel altogether, no state interference with counsel's assistance so as to amount to constitutional error of the first magnitude and no evidence of conflict of interest so as to fall within the parameters of United States v. Cronic, 52 LW 4560, supra. Therefore, the defendant was required to affirmatively prove prejudice resulting from counsel's conduct and meet "the burden of showing that the decision reached would reasonably likely have been different absent the errors." Strickland v. Washington, 52 LW 4565, 4573, supra.

A thorough review of the record in this case reveals that any indicia of prejudice to the defendant is totally lacking. Indeed, counsel's argument that prejudice need not be shown, in essence, admits this conclusion. Nevertheless, we find no prejudice from trial counsel's failure: 1) to obtain the preliminary hearing transcript, as he was able to present the victim's testimony therein through defendant's testimony at trial; 2) to obtain the Fulton County Jail custodian's affidavit to show when Crenshaw was there, especially in view of defendant's trial testimony that he had been in that jail with Crenshaw for five days and had talked with Crenshaw; 3) to file a motion to suppress, as

we find no evidence in the case which could have been subject to such a motion under the statute which authorizes it, OCGA § 17-5-30; 4) to investigate leads, interview alibi witnesses, or subpoena witnesses, because the testimony at the hearing on the motion for new trial shows that there was little of any material value to the defense that would have been produced by investigation, interview or subpoena.

Accordingly, even if trial counsel were deemed ineffective, we hold that the defendant has not shown that trial counsel's performance prejudiced the defense so that there is a reasonable probability that, but for counsel's conduct, the result of the trial would have been different.

*Judgment affirmed. Birdsong, P. J., and Carley, J., concur.*

DECIDED DECEMBER 4, 1984.

*Teddy R. Price*, for appellant.

*Robert E. Wilson, District Attorney, Susan Brooks, Patricia G. Cherry, Assistant District Attorneys*, for appellee.